This is a trademark infringement case filed by Jarritos, Inc., the owner of the Jarritos wordmark federally registered trademark, as well as the 3jug logo, against the defendant based on the defendant's use of both of these marks in connection with its restaurant. The district court granted summary judgment in favor of the defendant after excluding substantial evidence from the plaintiff's case and holding that Jarritos failed to offer sufficient evidence to survive summary judgment. We believe that the district court erred in both respects. With respect to the evidentiary rulings, this court has held that the standard of review is abuse of discretion. Yet the court abuses its discretion in an evidentiary ruling when it applies the wrong standard. We submit that is what the court did. The court erred by focusing on dismissibility and not form of the evidence. With respect to Exhibit A, which is a photograph of its signage hanging outside the Los Jarritos restaurant, and Exhibit N, a photocopy of a Jane magazine article, because the underlying content of each of those exhibits is self-authentication under the federal rules, no extrinsic evidence was necessary for authentication, and thus they would be admissible at trial. Regarding Exhibit C, which is a yellow-page advertisement, there is likewise little doubt that the proper foundation with respect to this evidence could be laid at trial either through the owner of the restaurant, Dolores Reyes, or through the yellow-page employee. Is there other evidence in the record on either of these issues that's sufficiently descriptive that it doesn't really matter whether we have the photos or the yellow pages? With the yellow page and the sign? Yes. With respect to the sign, there is absolutely other evidence in the record that supports Jarritos' position, and that is specifically that the owner of the restaurant, Ms. Reyes, testified that the signage over her restaurant included both the logo, which she acknowledged was a trademark of Jarritos, as well as the wordmark, Jarritos. So with respect to that, there is other evidence in the record. With respect to the yellow-page advertisement, off the top of my head, I can't think of anything, any other evidence that would go to that very same issue. Well, what are you trying to prove by the yellow-page advertisement, that it's in the yellow pages, or what the sign is? With respect to two things. One, the name of the restaurant is Los Jarritos. It doesn't seem to be in dispute, does it? Well, the district court, with respect to similarity of the marks, made a determination that he was evaluating Los Jarritos, a Mexican restaurant, versus Los Jarritos. And it appears from the record that that was actually an undisputed fact between the parties that the mark was Los – I mean, the defendant's mark is Los Jarritos, and the plaintiff's mark is Los Jarritos. I thought it was even conceded that the marks are similar. Yes, it was, Your Honor. So why are we getting into this? It was conceded not only in the district court, but in the briefs here, as far as I can tell. I agree with you. It was conceded here as well, both in respect to the fact that they essentially implicitly say – Is there any dispute that the restaurant also used the – I'll call it, you know, the three jug logo? There is no dispute with respect to that. They have conceded that as well. So it seems that perhaps we should be worrying about other things. Okay. So with respect to – I'll head directly, then, to the likelihood of confusion analysis. And we just discussed the similarity of the marks. We believe that the court erred in making any determination with respect to no similarity because, as you've indicated, Your Honor, that was conceded by the parties. With respect to relatedness of the goods and services, this is an – the district court erred in this respect because, after acknowledging that there is certainly some relationship between the parties' respective goods and services, the court concluded that there was no record evidence as to just how related they are. The court error stems from the fact that it ignored substantial record evidence, including specifically defendants' admissions, admission that the restaurant used both the logo and the words. Wasn't this the issue on which the district court relied on, this Federal Circuit case? The Coors case. Yes. It seems to have some similarity, doesn't it? Your Honor, it has similarity in the sense that both – both involved cases where you had one – the trademark owner being a beverage company and the defendant being a restaurant. Restaurant. The distinction is, however, that in the Coors case, the court had – there was no conclusion – excuse me – first difference was that there was no similarity in the marks. The Coors – the court – the Federal Circuit said, we have two highly distinctive marks and both of them are very stylized and they are very different. The second distinction between these two cases is that in the Coors case, the court said, well, yes, we know that some restaurants serve beer, but that doesn't necessarily make that link. Here, we have a significant factual distinction that not only do restaurants serve beer, but they also serve the burrito soda. But this very – But didn't that case also run the other way? Wasn't the claim that the – that Coors had copied the restaurant rather than the restaurant had copied Coors? I think you're correct, Your Honor. Which may put the relationship question in a different light. I agree with you, Your Honor. And additionally, I think that this case rather very clearly tracks the Beefeater case, which is a Fifth Circuit case, also another case outside this circuit, of course. But in the Beefeater's case, you're dealing with almost precisely the same situation in that you have a restaurant making use of a trademark owner's logo and wordmark. In that instance, they used the logo on their menu. And, in fact, there's nothing in the record that even suggests they actually sold the drink in the restaurant. But the court there on summary judgment found that infringement was undeniable. And they granted in favor of the plaintiff. And here, again, we have that second component, that not only are they using both the wordmark and the logo on their restaurant, but they are, in fact, selling the beverage on the premises. It is extremely common for, you know, little mom-and-pop restaurants to hang out at a cup and cola sign, for example. Is that a trademark violation? Your Honor, it's my understanding, both with respect to what Jarritos does, because Jarritos actually has that as well, there are often times that restaurants are using the Jarritos logo inside their restaurant. But those are under license agreements. They have a relationship with the restaurant owner to provide the – they will provide – you know, essentially, it's a beneficial relationship. The trademark owner gets some advertising, and the restaurant owner gets the benefit of some artwork and material in their restaurant. What is your client seeking in this case? I'm sorry? What are you seeking in this case? An injunctive relief, Your Honor. Not a damages. My right? When you say injunctive relief, you mean to cease using the name Jarritos? And the logo, yes, Your Honor. But I thought they ceased using the logo. They pulled it down from the restaurant, but I believe that as the case is ongoing, they just removed that sign. They haven't indicated that they intend to cease using the name. Have you been considered or been approached by the mediators in this court in terms of mediating this case? Yes, Your Honor, I believe the parties were approached, and the determination was made that the two sides did not want to mediate. I see. And does that remain true? I believe it does, Your Honor. Okay. Because why? Because it's just an all-or-nothing case? I'm sorry? Because it's an all-or-nothing case? No, I don't believe that's the case, Your Honor. I believe, it's my understanding that it's – we – in essence, the plaintiff was willing to mediate, and I think that question is best directed to the defendant. Okay. All right. So in essence, we believe that this case actually tracks the Bee Theater case and that Coors is distinguishable. So on the sleek – I'll call it the sleek factors – you think you've met all the ones that are relevant? Well, without a doubt, we believe we've affirmatively met likely – or the similarity of the marks and the relatedness of the goods and services. We also believe that we have evidence in the record that demonstrates strength of the mark as well as willful intent. And the predominant evidence with respect to that, in addition to other things, but the predominant evidence with respect to that is that the defendant uses – has directly copied the logo in addition to the word mark and placed it on there. Case law suggests that direct copying is both evidence of strength of a mark and is evidence of – you can have a presumption of intent to deceive when there is direct copying. In addition to that, we believe there's record evidence with respect to the strength of the mark as well from the sign, which has been excluded, and the yellow page ad. But in addition, the Jane magazine, which was also excluded. But in the record and not excluded, there's the Mexico Greatest Brands book, which was not excluded. The federal registrations that are owned by our client as well as the expert reports, which additionally are those that have also been excluded. And the willful intent factor is what is a willful intent to deceive about? To deceive – I mean, most likely here what they were trying to do was just to say that they sold the stuff there, but not – I mean, do you have to prove that they had an intent to make people think that your client owned the restaurant or was somehow responsible for the restaurant? The affiliative associated with the license to them allowed them to put that signage up there. I'm not even sure that there was any evidence in the record that they used the logo to just show that they sold Marito's Soda. In fact, the evidence of the record on the defendant's side is I didn't even know that was up there. So it was on their sign, but they make no claim to knowledge of it. And I think that's actually a distinction between the type of cases, which for the most part it's my understanding that they are license agreement cases with situations with respect to someone having the Coca-Cola sign or the Marito sign. But another distinction is it's not generally on the logo of the restaurant. It is a signage inside near, you know, where the soda's delivered. The restaurant's not called Coca-Cola. I'm sorry? The restaurant's not called Coca-Cola. Exactly. So there's another distinction difference with respect to that. Regarding the remaining sleep-craft factors, they are, in this instance, less relevant. And this court has found on several occasions that you do not need to have all factors or meet all factors to have a finding of infringement. All right. If you want to reserve time, you're attached to two and a half minutes. Thank you. Actually, I think I'll address those in my rebuttal. Thank you very much. I just have one question. Johnson Relief is being sought, an equity, correct? Yes. Would it be appropriate for this court to consider the delay in filing of your lawsuit? The restaurant was in business in the 1980s, I think. Correct. A little over 20 years before you enacted. Your Honor, with respect to that, our clients did not know of them until 2004. I believe it was 2004 or early 2005 where they first found out that they were in existence, and they contacted them directly after that. They did an Internet search, right? Correct. Thank you. Thank you very much. Good morning. May it please the Court, my name is Robert Romero. I'm Sean Corcoran. I'm on behalf of Rito's Restaurant and the Reyes family who are in the courtroom this morning. I think it's important for this Court to remember the context in which Judge White ruled in this case. Counsel began her argument with the evidentiary rulings that the judge made. The Court well knows the standard that applies. We believe that Judge White properly excluded evidence of a photograph. But I do understand that you've conceded similarity all along, and your brief doesn't contest it. So why are we getting into this? I understand that you have conceded similarity all along, and that your brief in this Court does not suggest that there's an issue as to similarity. So why are we getting into this? What difference does this make? I think it makes a difference in terms of what the judge said. Well, first of all, am I right about the fact that similarity is off the table? Yes, counsel did concede similarity. Okay. Which seems very hard not to do since the logo is sitting up there. Okay. But they weren't the same. And I think the district court, in its order, described how they were different. And they were different because of that. I see. So you think it matters as to how it plugs into the overall sleek craft factors, even though if they're similar enough to get a checkmark, they're still not that similar. The point I was trying to make is that Judge White said that even if she did consider the sign, that trademark infringement didn't exist as a matter of law, But he said that there wasn't similarity, and I don't know how he did that. Well, Your Honor, I think he did that because he applied all of the eight sleek craft factors. No, but he said there wasn't similarity, I thought. I thought he said as to the similarity factor, there was not similarity. I think Judge White's order said that they were similar, but it didn't matter because he trusted the eight sleek craft factors. So why? We believe, Your Honor, that in this case, when we apply all the eight sleek craft factors, one of the sleek craft factors is the relatedness between the case and the service. I think the court is on plenty. I think Judge Hume, in this case, in the court case, Your Honor, thought that was the situation where the beer company wanted to trademark Blue Moon. The trademarking office says that they're not going to trademark Blue Moon because it's substantially similar to the rest of the country. That means that the circuit court, the court that's in charge, says no. We believe that Judge White, when he applied that factor of the sleek craft test, necessarily came to the conclusion that the beer company wanted to trademark Blue Moon. So are you saying that the restaurants and what they serve are just as a matter of law not related? Well, in this context, when you apply this factor, we don't believe that they're related. The soda company and a restaurant. It's not unusual, as we've seen, for restaurants to distinguish themselves by what it is they sell, put signs out front about what they sell or to put it inside what they sell and to promote themselves based on what they sell. Well, Your Honor, to Judge Kimlin's point on the question he asked counsel, this is a situation where my client's restaurant has existed in admission for 20 years, since 1988. And since that time, there's been no actual confusion. And when the sleek craft factors are applied... Well, you may well win in the long run, and it's really somewhat mysterious to know why, after all these years, they decided to come after a little mom-and-pop restaurant in the Mission District. But that's basically what's happened here. And the question is, why, as a matter of law, can you substantiate the summary judgment? That's what I'm having a hard time with. Well, I believe that relates to the Solitec standard, the Massacheta, the Anderson v. Liberty Lobby trial court in Rule 56. They don't decide issues, but they have to look at the sufficiency of what's being offered as a tribal issue. Judge White looked at that. And he had to look at the case of the Burden of Truth, which is a trademark infringement review by Aretos. And the confusion or the likelihood of confusion must be probable. It's not simply a possibility. I gather that your clients are not using the actual logo anymore. Yes, Your Honor. That's correct. The sign was immediately taken down. All right. So are you willing at this point to mediate as to the scope of an injunction? I would speak to my clients about that. I have not had an opportunity to do so. Your Honor, the remaining sleep-trapped backers, which we believe the court profits from, one of the arguments that counsel made was the willful infringement. This is a case in the record before Judge White had this deposition testimony before it. Mrs. Reyes is from the state of Jalisco in Mexico. And in the state of Jalisco, she named that restaurant not to infringe on anymore. She named that restaurant based on a memory of her mother who lived in that state. And she had a dream, and she wanted to open a restaurant, and she did. And that's not uncommon. But the problem is that she actually used the logo. That's what makes this case difficult. If it just said Los Doritos, I mean, that would be a different matter. But it didn't. The logo, as Judge White noted, the photograph, there was discussions of how there was similarities. My client didn't do that. The sign was made and it was taken down. Well, let's suppose you're right. Okay. So let's suppose that of the sleek craft factors for now, let's suppose we had similarity, a relationship, and a relatively strong mark, but that's all. What would be the result at that point? Well, the strength of the mark, we don't believe there was any evidence in the record before Judge White proved that. In fact, there was reputational testimony that restaurants were using this name as early as 1965. Mr. Robles was deposed. Again, that's the name, but it's not the mark, the actual logo. But this case is predicated on the use of the name as well. Judge White cast all those statements down. There was no intent to infringe. And that's one of the things that I take back. The use of the word Javitos is an awful number of restaurants, to use your phrase, just for fun. My own grandfather's mother, when she immigrated to Oakland, I had dinner with my uncle, who was a priest in Oakland, or is a priest in Oakland, I've been a priest for 45 years, and I told him about what I was doing this morning, and he said, you know, that reminds me, when your grandfather's sister came to Oakland on 7th Street, she opened a restaurant, and that restaurant was called Javitos Cafe. That underscores what my client thought about when she was naming this restaurant. It wasn't to infringe upon a mark, or a word that's been used for years in this country, and the deposition record before that time. Well, is there any testimony in the record as to how the three-judge logo got on the sign at the restaurant? I don't believe there was any evidence before Judge White. I know that that testimony was developed at the lower court stage. It was simply a restaurant that was made for my client, and it was taken down immediately. In the logo, even though there was similarities, there was differences in color, the rest of the sign itself was Los Doritos, a Mexican restaurant. It's actual confusion of a reasonably prudent consumer. Was your opponent correct in saying that you have not agreed not to put the logo back up? I'm sorry, I don't know what's with this. But was your opponent correct in saying that your clients have not agreed not to put the logo back? Have not agreed? Yes. I believe the contrary is true. They have no intention to put the sign up again. This is a mom-and-pop situation. The logo ran on the sign. They have no intention of changing their name. So as far as your clients are concerned, the issue is the name, not the logo? Because you're willing to just essentially stipulate to an injunction about the logo. It's the name of the restaurant. No one had any intention on my client's part. This did not come about as an effort to infringe upon the Joritos logo. This is, as I said, and that is one of the sleep craft factors. Why does this case go to a jury anyway if you're dealing with only an injunction? It was my understanding that there was more than that in the complaint. I heard that this morning, but that wasn't my understanding. We moved for summary judgment as to all of them. In terms of the logo itself, and that's been raised in some of your questions and in the comments of counsel, there is a citation that I think is part of the original motion that came to this jury. But when I read that case in preparing for the argument, it says, even when there is, and this is a quote, even when, even where there is precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion and thus no trademark infringement if the alleged infringer is in a different geographic area or in a wholly different industry. But it's certainly not. I mean, you were selling the drinks. People drink this in Mexican restaurants, so there easily could have been some assumption that there was some connection there. It would be different if somebody was selling shoes and used this, but that's not what was going on here. But the course case was running in the other direction, and that seems to me to matter. First of all, they weren't using the logo, so that's different. But second of all, it was running in the other direction. That is, you had a drink that was similar to a restaurant rather than a restaurant that was similar to a drink. And it just seems to me that the assumptions of consumers about whether they're connected or not are likely to be different, or at least they're not necessarily the same. We believe, under the reasonably prudent standard, there would not be sufficient evidence in this court that that's what we believe Judge Wright is correctly reporting that he did. And I cite to this provision that we do believe there's a fundamental difference between a soda company in Mexico that might have fame there and a restaurant that exists in the mission of San Francisco. And again, the risk is that they've been listed for 20 years without any actual confusion. Well, but that's the part we don't know about, right? There's really nothing in the record about confusion. Judge Wright, Your Honor, the moving party was incumbent upon them to put that evidence in the record. The record is devoid of that. And the other point that I'd like to make, because I think my time is ending, is that there's a suggestion by my opponent that the court does not have to evaluate each and every one of the sleep craft factors. We believe the case law is crystal clear that that's not how it works. The court has to evaluate each of the sleep craft factors. But they don't all have to run in the same direction. They don't all have to run in the same direction, but you have to look at them. But there has to be an assessment. But we don't work on a Rule 56 standard. And I've looked at the lead judges who seem to quote on this. You have to have evidence if you're the plaintiff and if you're going to drag a small business owner into the courtroom to meet the proof. I understand why the expert evidence was excluded. I'm having a very hard time with the other. It just seems to so completely exalt form of resubstance at the summary judgment stage where any sort of technical defect in the submissions obviously could be cured. I don't think it makes any sense to me at all. Your Honor, we would submit that the only thing that we can bring Rule 56 motions to the program is the very question of Rule 56 and why we need to have admissible evidence. All right. The photograph has an affidavit saying this is a correct, true and correct photograph of the sign. So your problem, I gather, isn't that it isn't a true and correct photograph of the sign, but it's not necessarily a true and correct photograph of the photograph? I mean, what is your complaint about it? It's not an accurate depiction. Of what? Of the sign or of the photograph of the sign? Pardon me? Of the sign or of the photograph of the sign? Of the accurate depiction of the photograph of the sign.  So you're suggesting that maybe this isn't really the photograph of the sign? Well, Your Honor, for purposes of Rule 56, Perritos had access to the actual sign. It came from the counsel's office. But that's a different issue. That's why I'm asking you the question. Is your complaint that it's not a correct photograph of the sign, or it's not a correct photograph of the photograph of the sign? No, no. It was our contention at the trial court level that it was hard for us to determine whether it was an accurate photograph of the sign. But there is an affidavit saying this is a true and correct photograph of the sign. So for that purpose, why isn't it authenticated? That's why I thought you were then retreating to the notion that it's not necessarily a true photograph of the photograph. But the counsel could authenticate it by his perception of having seen the sign. I've seen the sign. I've seen the photograph. This is a true and correct photograph of the sign. Okay. You're over your time. So thank you very much for your argument. Thank you. Just a couple things. First, I misspoke. I had to go back and look. I'm a new counsel to this case. I had to go back and look at the complaint. I have some findings. Damages were requested at the district court level, which is why it would be going to a district court level. And listen, with respect to counsel's statement that the defendant has any realistic possibility of establishing damages with regard to any actual injury caused by the use of this restaurant in the Mission District of your sign. I would say it will be difficult to assess without further discovery, which the discovery has passed. Are there statutory damages? For trademark infringement? Your Honor, I'm blanking. You're not sure. I'm blanking on that. Don't waste your time. I apologize. With respect to the issue of the logo versus the sign, one of the things we're dealing with here is a credibility determination, which is for the jury to determine. Ms. Ferrito's – I'm sorry. Ms. Reyes testifies that the reason she adopted the name was because of a personal significance to her. On the other hand, she put our logo, my client's logo, right up on the sign. But I understand that it is correct that your client is – would continue this case with regard to the name, even if the sign were gone forever and the logo. Is that right or not? Yes, Your Honor. So your complaint is that they're using the name, thus your retros.  Well, we've been essentially told that they will stipulate to an injunction as to the logo. So let's assume that that would be – you've got to go in the back room right now and stipulate to that injunction. So let's assume that we're not talking about the logo anymore, at least as to the injunction. It's my understanding that the client intends to continue the case on the word mark as well. And then, Your Honor, with respect to the issue of confusion, one of the situations that you have in this case is that, as in trademark cases generally, but particularly here, when you see the logo on the sign and you see the logo in the store being on the product itself, it's as if – I travel through Boston a lot. It's where my family resides. I walk in, there's a Sam Adams bar and grill. They sell Sam Adams. It has never been a question to me as to whether they're an affiliate. I assume they're affiliated. I have no question of confusion. I don't raise it to the bartender. I don't raise it to the owner. And I don't contact Sam Adams to ask them if they are affiliated. There's Chi-Chi's restaurants that exist, and there's Chi-Chi's salsa. These are not things that are likely to even raise an eye. So finding evidence of confusion in this kind of situation is more difficult because you already see the affiliation, particularly with respect to the text of the logo. Thank you very much, Your Honor. Can I ask one question? Does your client market his product in California? I'm sorry? Does your client market his product in California? Yes. And also in the United States? All throughout the United States, Your Honor. They're actually housed not in Mexico. It's originally from Mexico. They're housed in El Paso. It's a U.S. company. And they do sell throughout the United States. And, in fact, obviously they sold in or their product was sold in the Jarritos restaurant. All right. Thank you. Okay. Thank you very much. Thank you, counsel, for useful arguments. The case of Jarritos, Inc. v. Dolores Reyes is submitted.
judges: Tashima, Berzon, Timlin